IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-774-FL

| | | |
|---|---|---|
| TONI EUPHEMIA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Toni Euphemia Jones ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 11, 15. Both filed memoranda in support of their respective motions. D.E. 12, 16. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 27 Feb. 2017 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## BACKGROUND

### I.    CASE HISTORY

Plaintiff filed an application for DIB on 8 March 2013, alleging a disability onset date of 26 February 2013. Transcript of Proceedings ("Tr.") 19. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 19. On 14 October 2015, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a

vocational expert testified. Tr. 34-71. The ALJ issued a decision denying plaintiff's claim on 16

November 2015. Tr. 19-29. Plaintiff timely requested review by the Appeals Council. Tr. 8.

On 25 July 2016, the Appeals Council denied the request for review. Tr. 1-5. At that time, the

decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. On

29 August 2016, plaintiff commenced this proceeding for judicial review, pursuant to 42 U.S.C.

§ 405(g). *See* Compl. (D.E. 1).

## II.    STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *Pass v.

Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).   "An individual shall be determined to be under a

disability only if his physical or mental impairment or impairments are of such severity that he is

not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an

impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §

423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that

the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working;
> at step two, whether the claimant's medical impairments meet the [R]egulations'
> severity and duration requirements; at step three, whether the medical
> impairments meet or equal an impairment listed in the [R]egulations; at step four,

whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[1] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[2]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[3] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

---

[1] *See also* 20 C.F.R. § 404.1545(a)(1). The versions of the Regulations cited in this Memorandum and Recommendation are those in effect at the time the ALJ issued his decision.

[2] *See also* 20 C.F.R. § 404.1545(a)(2).

[3] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

## III.    ALJ'S FINDINGS

Plaintiff was 52 years old on the alleged onset date of disability (26 February 2013) and 55 years old on the date of the hearing (14 October 2015).  Tr. 28 ¶ 6.  She has at least a high school education (Tr. 28 ¶ 6) and past relevant work as a nurse secretary and supply clerk (Tr. 27-28 ¶ 6).

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability.  Tr. 21 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations:  diabetes mellitus, degenerative joint disease, right shoulder status post rotator cuff repair surgery, hypertension, asthma, and obesity.  Tr. 21 ¶ 3.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings.  Tr. 23 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally push and pull and operate hand controls with her right upper extremity.  The claimant can frequently reach, handle objects, and finger, but never reach overhead, with her right upper extremity.  The claimant can occasionally be exposed to concentrated levels of pulmonary irritants such as dust, odors, fumes, and gases and to poorly ventilated areas.  The claimant can occasionally be exposed to unprotected heights, hazardous machinery and moving mechanical parts.

Tr. 24 ¶ 5.[4]

---

[4] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, L-Light Work, 1991 WL 688702.  "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 404.1567.

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a nurse secretary (DOT no. 201.362-014), which is at the sedentary exertional level, as actually and generally performed.  Tr. 28 ¶ 6.  The ALJ therefore determined that plaintiff had not been under a disability from the alleged onset of disability, 26 February 2013, through the date of his decision, 16 November 2015.  Tr. 29 ¶ 7.

The ALJ made the alternative finding at step five that there are other jobs in significant numbers in the national economy that plaintiff could perform, including jobs in the occupations of counter clerk, usher, and shipping and receiving weigher.  Tr. 28 ¶ 6.  On this alternative basis, the ALJ also concluded that plaintiff had not been under a disability from the alleged onset of disability through the date of his decision.  Tr. 29 ¶ 7.

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld.  *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla of evidence, but somewhat less than a preponderance.  *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## <u>OVERVIEW OF PLAINTIFF'S CONTENTIONS</u>

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded or the case should be remanded on the principal grounds that the ALJ erred in discounting plaintiff's credibility and thereby in overstating her RFC; not adequately evaluating plaintiff's obesity; and misapplying the Medical-Vocational Guidelines in his alternative step five analysis. Because the court finds the issues relating to the ALJ's credibility assessment and RFC determination to be dispositive of this appeal, its analysis will focus on them.

**ALJ'S CREDIBILITY ASSESSMENT AND RFC DETERMINATION**

**I.      APPLICABLE LEGAL PRINCIPLES**

**A.      Credibility Assessment**

The ALJ's assessment of a claimant's credibility involves a two-step process.  First, the ALJ must determine whether the claimant's medically documented impairments could cause his alleged symptoms.  *Craig*, 76 F.3d at 594-95.  Next, the ALJ must evaluate the claimant's statements concerning those symptoms.  *Id*.  The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'"  *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[5]

In assessing a claimant's credibility, the ALJ must consider "all of the available evidence."  20 C.F.R. § 404.1529(c)(1).  The evidence that should be considered includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  *Id.* § 404.1529(c)(1)-(3).

---

[5] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 16 November 2015.

"A party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012); *Lewis v. Berryhill*, ___ F.3d ___, 2017 WL 2381113, at *6 (4th Cir. 2 June 2017) (citing 20 C.F.R. § 404.1529(c)(2)). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

## B.    Determination of RFC

As discussed, a claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The assessment of a claimant's RFC must be based on all the relevant medical and other evidence in the record. *Id.* § 404.1545(a)(3). An ALJ's decision must state his RFC determination and provide the supporting rationale for it. *See Mascio*, 780 F.3d at 636.

Under Social Security Ruling 96-8p, a claimant's RFC signifies an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," and "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996). Thus, "[a]s defined, any assessment of a claimant's RFC is necessarily an assessment of the claimant's ability to work a forty-hour work week." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09cv622, 2010 WL 6621693, at *14 (E.D. Va. 29 Dec. 2010), *rep. & recomm. adopted*, 11 Feb. 2011 Ord. (D.E. 16). Light work also assumes the ability to work an eight-hour workday. *See, e.g.,* Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 (1983) ("[T]he full range of

light work requires standing or walking, off and on, *for a total of approximately 6 hours of an 8-hour workday*." (emphasis added)).

### C. Assessment of Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1527 (c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

## II.    ANALYSIS

At the hearing, plaintiff testified to the effect that her RFC was severely limited by numerous impairments:

> At the hearing, the claimant testified that she could not work because she injured her shoulder on the job and had to have rotator cuff surgery. She was placed on light duty restrictions after her surgery. On February 13, 2013, she stopped working. She testified that she cannot pick up more than a glass of water with her right arm, and no more than a gallon of milk over all. She testified that her right hip and lower back hurt, and she has arthritis and diabetes. The claimant testified that her right toe hurts and bothers her. The claimant testified that she suffers from migraines, 2-3 a month, lasting several hours.

Claimant takes insulin and medication, and tries to watch her diet for her diabetes, but is tired sometimes and does not feel well half the time.

The claimant testified that she had rotator cuff surgery, again, in August 2012, but never regained strength after the surgery.

The claimant testified that she lives with her husband and two kids, ages 28 and 23. She testified her husband does not work but her kids do work. She has her driver's license, but testified her husband does the driving. She testified her kids each own their own cars, and she and her husband own two cars.

The claimant testified that she can walk maybe 2 blocks before needing to rest. She sleeps in a recliner, but can sit for up to an hour. She can stand for up to 20 minutes, and lift only a glass of water in her right arm, up to a gallon of milk with both arms.

Tr. 25 ¶ 5 (ALJ's summary of plaintiff's testimony at Tr. 40-64).

Plaintiff contends that her testimony is supported by the medical evidence and establishes that she is unable to perform substantial gainful employment at any exertional level. The ALJ, though, discounted plaintiff's credibility. Plaintiff contends that not only was this credibility assessment itself erroneous, but it led to an erroneous, overstated RFC determination. The court agrees that the ALJ erred.

At the first step of the credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 27 ¶ 5. However, at the second step the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 27 ¶ 5. With respect to the medical evidence specifically, the ALJ stated, "While the medical evidence does support that the claimant suffers from certain impairments, the claimant's testimony regarding the severity of her limitations is not supported by the medical evidence and medical opinions, as discussed in this decision." Tr. 27 ¶ 5.

As to his RFC determination, the ALJ summarized his analysis as follows:

> In sum, the above [RFC] assessment is supported by medical records and medical opinions and appropriately addresses all of claimant's impairments, severe and nonsevere, alone and in combination. The undersigned has taken into consideration the subjective complaints of the claimant, the claimant's medical history and the medical opinions of record.

Tr. 27 ¶ 5.

The principal deficiency in the ALJ's credibility assessment and RFC determination is his failure to address a key opinion by plaintiff's treating orthopaedic surgeon, Brian T. Szura, M.D., of Cary Orthopaedic. At the hearing, plaintiff acknowledged that the impairment of her right shoulder is her most limiting impairment. Tr. 48. Dr. Szura performed both rotator cuff surgeries on her in December 2011 and August 2012, respectively. He also oversaw the 38 physical therapy sessions she had at Cary Orthopaedic and examined her on 13 occasions of record between March 2012 and May 2013, in addition to performing the two surgeries. *See*, *e.g.*, Tr. 249-52, 264-81, 285-88, 298-302, 315-19, 325-31, 342-51, 366-68, 388-92. His last examination of plaintiff of record was on 2 May 2013. Tr. 388-92. This examination followed a functional capacity evaluation of her on 25 April 2012, the results of which suggested that she made a submaximal effort. Tr. 388.

In his note on the 2 May 2013 examination, Dr. Szura found that plaintiff "has reached maximal medical improvement with regard to her right shoulder." Tr. 389. He then imposed a permanent restriction of five pounds lifting with the right arm and only occasional above-shoulder use of that arm. Tr. 389, 391. Dr. Szura explained these restrictions as follows:

> Despite the invalid functional capacities evaluation I do believe that appropriate permanent work restrictions need to be provided given her clinical presentation and need for revision rotator cuff repair. I do not believe the guidelines provided in the functional capacities evaluation can be directly applied because of the validity testing. I went back and spoke with her therapist concerning his opinion regarding her abilities. She was routinely working out with 3 pounds and up to 6

pounds with the right arm with certain activities. I would therefore provide permanent work [restrictions][6] of 5 pound lifting with the right arm [and] no more than occasional use of the right arm above shoulder level. She should have no specific limitations with her left upper extremity

Tr. 389. Dr. Szura also opined that plaintiff could not perform her regular work, but was restricted to light duty. Tr. 391.

In his decision, the ALJ does not address the permanent restrictions imposed by Dr. Szura. He erred by not doing so. The restrictions comprise a medical opinion by a treating physician. The ALJ was required to indicate the weight he gave this opinion and the reasons for the weight given. *See*, *e.g.*, Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5.

The omission of any discussion by the ALJ comes despite his express reference to plaintiff's treatment at Cary Orthopaedic extending to 2 May 2013. Tr. 25 ¶ 5. He also cited to the exhibit, Exhibit 3F, five of the nine pages of which consist of Dr. Szura's note on his 2 May 2013 visit with plaintiff (including a related workmen's compensation report). Tr. 25-26 ¶ 5.

Moreover, the ALJ discussed Dr. Szura's note on the examination immediately preceding the 2 May 2013 visit, on 28 March 2013.[7] He stated:

> [I]t was noted the claimant would likely require some permanent work restrictions given the nature of her surgical interventions (Exhibits 2F, 3F). The opinion is given some weight, and *based on the medical evidence as a whole*, work restrictions regarding claimant's right shoulder are incorporated in the claimant's [RFC] above.

Tr. 25-26 ¶ 5 (emphasis added). This analysis is no substitute for an assessment of the opinions expressed by Dr. Szura in his 2 May 2013 note.

---

[6] In lieu of "restrictions," the term used was "extractions." Tr. 389. Read in context, the intended meaning is clearly restrictions. Further, the workmen's compensation report with the note expressly identified the five-pound limitation as a permanent restriction. *See* Tr. 391.

[7] As discussed below, in a portion of his discussion of the note on the 28 March 2013 visit, the ALJ refers to the visit as having occurred on 22 April 2013. *See* Tr. 25-26 ¶ 5.

Among other reasons, the imposition of permanent restrictions was not definite as of the 28 March 2013 visit, and the specific restrictions ultimately imposed were at that point unknown. Further, the explanation for the ALJ's attribution of "some weight" to the opinion that permanent restrictions would likely be imposed—"the medical evidence as a whole"— is wholly deficient. Tr. 26 ¶ 5. Without a specification of the evidence to which the ALJ is alluding, this explanation provides little insight into the ALJ's reasoning.

While in his RFC determination the ALJ did impose some limitations on plaintiff's use of her right arm, he did not impose any limit on lifting. To the contrary, by finding plaintiff capable of light work and therefore able to lift up to 20 pounds, he implicitly determined that plaintiff could lift 20 pounds with her right arm, four times the limit imposed by Dr. Szura. Such a large discrepancy cries out for a meaningful explanation.

Most fundamentally, though, it makes no sense to discuss the possibility that permanent restrictions *will* be imposed and then remain silent about the restrictions that *are* imposed. Notably, the ALJ had previously discussed limitations Dr. Szura imposed "[f]our months following surgery," ostensibly referring to the note on his 10 January 2013 visit with plaintiff.[8] Tr. 25 ¶ 5 (referencing Tr. 328, 330[9]); *see also* Tr. 278 (noting 28 Aug. 2012 as the scheduled surgery date). He gave them little weight because they "are not noted to be permanent, and were given while the claimant was participating in physical therapy" and thereby "were intended to be limited to while the claimant was recovering from her surgery." Tr. 25 ¶ 5. Thus, the ALJ himself recognized that permanent restrictions had unique significance, beyond that of interim restrictions.

---

[8] As discussed below, the ALJ apparently confuses this office visit note with an earlier one.

[9] The workmen's compensation report at Tr. 330-31 appears to be a corrected version of the report at Tr. 328-29, omitting the sentence erroneously positing that the surgery had not already occurred (*i.e.*, "Please continue current work restrictions until surgery, then out of work until post-op appointment.").

The ALJ's erroneous failure to address the restrictions imposed by Dr. Szura standing alone requires remand. Proper analysis of Dr. Szura's opinion could reasonably be expected to have produced a different outcome. *See*, *e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Pulliam v. Colvin*, No. 1:13-cv-176, 2016 WL 843307, at *4 (M.D.N.C. 1 Mar. 2016) (holding that error in ALJ's failure to expressly weigh treating physician's medical opinion was not harmless and warranted remand). One reason is the potential weight accordable Dr. Szura's opinion. As noted, the opinions of treating physicians are potentially entitled to controlling weight. Here, Dr. Szura is a specialist in the medical field at issue, he had an extended treatment relationship with plaintiff, and provided a detailed explanation of his opinions, factors tending to give weight to them. *See* 20 C.F.R. § 404.1527(c)(2), (3), (5). Further, he treated the impairment that plaintiff characterizes as the principal impairment underlying her alleged disability.

In addition, by virtue of his silence about Dr. Szura's opinion on permanent restrictions, the ALJ failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" he reached regarding plaintiff's credibility and RFC, as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The court is thereby precluded from conducting a meaningful substantial-evidence review of the ALJ's decision, a ground independently requiring remand. *Id.* at 190-91 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).[10]

---

[10] The fact that the ALJ determined the past relevant work he found plaintiff capable of performing—the job of nurse secretary—to be at the sedentary level, and thereby within the scope of the light exertional level of which he found plaintiff capable, does not negate this ground for remand. Among other reasons, the lifting limit for sedentary work is ten pounds. 20 C.F.R. 404.1567(a). This is twice the permanent limit set by Dr. Szura. Proper analysis by the ALJ could therefore have conceivably resulted in the conclusion that plaintiff lacked the RFC for even sedentary work.

The ALJ's decision contains other errors that also call into question whether he had an accurate understanding of the medical records and support the need for remand. For example, he states that "[o]n March 28, 2013, it was noted the claimant disclosed at an appointment she had been released from her job because she was a liability." Tr. 25 ¶ 5 (referencing Tr. 347). In the next sentence, he begins his discussion of Dr. Szura's opinion at that visit that plaintiff would likely require permanent restrictions, but gives the date for this opinion as "April 22, 2013." Tr. 25-26 ¶ 5 (referencing Tr. 348). The ALJ therefore appears to have misunderstood that he was actually discussing the same note.[11]

The 22 April 2013 date is a "Report Date" that appears in the top line on two pages of the three-page note on the 18 March 2013 visit (Tr. 348, 349), including the page addressing permanent restrictions (Tr. 348), but not the page about plaintiff's loss of her job (Tr. 347). The "Report Date" also appears on the top line of one page (Tr. 351) of the two-page workmen's compensation report appended to the note. This same "Report Date" appears on numerous other records from Cary Orthopaedic. *See*, *e.g.*, Tr. 316-17, 319, 327, 329, 331, 344, 365, 367, 379. The note on the 28 March 2013 visit clearly states "**EXAM DATE:** 03/28/13" on the first page. Tr. 347 (formatting original). The workmen's compensation report also states "**DATE: 03/28/13**." Tr. 350 (formatting original). The same line containing the "Report Date" also includes "**DOS:** 03/28/13," ostensibly referring to the date of service. *See*, *e.g.*, Tr. 348, 349, 351. The identical format for the line containing a reference to "Report Date" is used on the

<hr />

[11] The Commissioner argues that the "April 22, 2013" note to which the ALJ refers is the note on the 2 May 2013 visit containing the permanent work restrictions Dr. Szura imposed. Comm'r's Mem. 7 n.2. But, as discussed, the ALJ describes the purported "April 22, 2013" note as stating that "claimant would likely require some permanent work restrictions." Tr. 25-26 ¶ 5. This description tracks the statement in the March 28, 2013 note that plaintiff "will likely require some permanent work restrictions." Tr. 348. In contrast, as also discussed, the 2 May 2013 note actually imposes permanent work restrictions. Tr. 389, 391.

other pages on which the line appears.  There is no note on any visit by plaintiff with Dr. Szura on 22 April 2013.

Also troublesome is the ALJ's description of the findings in the note on plaintiff's last physical therapy session at Cary Orthopaedic on 23 February 2013.  He states:

> It is noted the claimant completed physical therapy sessions as advised.  It is further noted on February 20, 2013 claimant exhibited *partial range of motion*, within normal limits in all directions, with some *decrease in muscle strength*, specifically in the trap and bicep (Exhibit 5F and 6F).

Tr. 26 ¶ 5 (emphasis added).  The pertinent portion of the note reads:

> *PROM* WNL's all directions; end-range IR tightness compared to contralateral; *MMT*: 4/5 flex/abd w[i]th less than full effort; 4+/5 IR/ER; *TTP*: trap, proximal bicep; Swelling unremarkable

Tr. 341 (emphasis added).  These findings are repeated in the 17 April 2013 physical discharge summary from Cary Orthopaedic.  Tr. 498.

It is evident from the ALJ's findings that he is interpreting "PROM" to mean "partial range of motion."  Undoubtedly, though, it signifies passive range of motion—meaning the range of motion shown by a therapist's moving the patient's body part without active participation by the patient (as opposed to active range of motion, where the patient controls the movement). *See*, *e.g.*, *Stevens v. Colvin*, C/A No. 1:15-2823-BHH-SVH, 2016 WL 2947675, at *3 (D.S.C. 19 Apr. 2016), *rep. & recomm. adopted*, 2016 WL 2939569 (20 May 2016); Tr. 265, 269, 273, 299, 348 (collectively pages in Cary Orthopaedic records on which term "passive range of motion" appears).  Indeed, the ALJ's finding that plaintiff had "partial range of motion" that was "within normal limits" is inconsistent on its face.

In addition, the ALJ's findings indicate he interpreted "TTP" to be an indicator of strength, when, in fact, it likely means tender to palpitation.  *See*, *e.g.*, *Franklin v. Colvin*, No. 15-cv-01764-RJB-KLS, 2016 WL 3659152, at *4 (W.D. Wash. 17 June 2016), *rep. & recomm.*

*adopted*, 2016 WL 3570786 (1 July 2016). Strength is indicated by "MMT," at least to extent it stands for manual muscle test, which it likely does. *See*, *e.g.*, *Stevens*, 2016 WL 2947675, at *4; Tr. 283.

The ALJ's apparent misinterpretation of the 20 February 2013 note is significant, in part, because this was, as indicated, plaintiff's final physical therapy visit, thereby showing her condition at that advanced point. More generally, however, the ALJ's error suggests that he misinterpreted "PROM," "TTP," and possibly "MMT" whenever they appeared in the medical records. *See*, *e.g.*, Tr. 262, 282, 293, 295, 297, 306, 308, 310, 313, 321, 333, 336, 341, 354, 355, 365, 370, 373, 377, 381.

Apparently referring to the 17 April 2014 Cary Orthopaedic discharge summary, the ALJ states "[o]n April 17, 2014, claimant was seen at Cary Orthopaedics for evaluation and treatment of right shoulder AC repair and bicep tendonesis/debridement." Tr. 26 ¶ 5. This document, though, gives no indication that plaintiff appeared for treatment on that date. Indeed, it indicates just to the contrary. The title appearing under the Cary Orthopaedic letterhead reads "Performance Physical Therapy Discharge Summary," and the heading "Discharge Summary" appears prior to the narrative set out. Tr. 498. The narrative states that "[p]atient was last seen in clinic on 2/20/13." Tr. 498. The conditions referenced by the ALJ are identified in the discharge summary as "Diagnosis." Tr. 498. There is no separate treatment note for a visit by plaintiff at Cary Orthopaedic on 17 April 2014. This apparent error by the ALJ suggests confusion on his part about the length of plaintiff's course of treatment at Cary Orthopaedic.

Additionally, one reason the ALJ gives for discounting the restrictions ostensibly set out in the note on Dr. Szura's 10 January 2013 visit with plaintiff is that "they are from 2012." Tr. 25 ¶ 5. Again, though, the note involved clearly appears to be that of 10 January 2013, not some

other note in 2012. The 10 January 2013 note specifically states that it is "[n]ow about 4 months status post surgery." Tr. 325. The surgery occurred, of course, in August 2012. Moreover, the examination findings in the note match those recited by the ALJ—forward flexion lacking about 20 degrees and continued weakness of abduction in the right shoulder. Tr. 25 ¶ 5; 326. Dr. Szura did see plaintiff on 29 November 2012, but the note on that visit states that it was then "[j]ust over 3 months status post surgery" (Tr. 315) and contains no finding on weakness of abduction (Tr. 316).

In addition to the multiple errors by the ALJ in the interpretation of the medical records, the ALJ's finding that plaintiff had no limitations in activities of daily living is troublesome. He found:

> In this area, the claimant has no limitation. The claimant testified that she can handle her personal hygiene, but needs help doing her hair, and *on occasion, needs help dressing, depending on what she is wearing*. She has a dog, which she lets out, and provides food and water for. Her kids do the chores. In her adult function report, the claimant stated that she washes up, *gets dressed, with the help of her husband*, makes breakfast, and takes her medication. The claimant wrote that she walks her dog. She stated she does light cleaning, such as the dishes and vacuuming (Exhibit 4E).

Tr. 22 ¶ 3 (emphasis added). Thus, despite seemingly crediting plaintiff's repeated representation that she was at times unable to dress herself, the ALJ found that she had no limitations in activities of daily living. The ALJ offers no explanation why plaintiff's inability to always dress herself is not a limitation in activities of daily living. As with the apparent deficiencies in the ALJ's interpretation of the medical records, the ALJ's finding regarding plaintiff's activities of daily living bolsters the need for remand.[12]

---

[12] Given the recommended disposition of this appeal, the court need not rule on the propriety of the ALJ's alternative step five analysis. Nonetheless, it presents several concerns. As the ALJ notes, plaintiff changed from the closely approaching advanced age category to the advanced age category during the alleged period of disability. The change came in September 2015, when plaintiff reached the age of 55, with about 2 and a half months remaining in the alleged disability period. The ALJ explained that he used Medical-Vocational Rule 202.14 as a

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 11) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 15) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 11 July 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described**

---

framework for his alternative analysis. Tr. 28 ¶ 6. That rule applies to persons in the closely approaching advanced age category. Nonetheless, the ALJ goes on to state, "As indicated above, given the restriction to light work, the claimant would grid at advanced age if she could not do past relevant work." Tr. 29 ¶ 6. Precisely what the ALJ means by "would grid" is not clear. To the extent he is saying that the applicable rule for persons in the advanced age category would apply to plaintiff if she could not do her past relevant work, it is unclear why he used the rule for persons closely approaching advanced age in his alternative analysis. On remand, the Commissioner should avoid such ambiguities in her step five analysis, if she reaches that step.

**above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

This 27th day of June 2017.

James E. Gates
United States Magistrate Judge